IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MERRY MARGARET ACOSTA,              )
                                    )
            Plaintiff,              )
                                    )
     v.                             )          1:14CV1056
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of             )
Social Security,                    )
                                    )
            Defendant.              )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

         Plaintiff Merry Margaret Acosta brought this action

pursuant to Section 205(g) of the Social Security Act (the

"Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a

final decision of the Commissioner of Social Security

("Commissioner") denying her claim for Disability Insurance

Benefits under Title II of the Act.  The court has before it the

certified administrative record and cross-motions for judgment.

**I.    BACKGROUND**

         Plaintiff filed an application for Disability Insurance

Benefits in February 2012 alleging a disability onset date of

December 16, 2011.  (Tr. at 208-10.)[1]  The application was denied

_____

         [1] Transcript citations refer to the Administrative
Transcript of Record filed manually with the Commissioner's
Answer.  (Doc. 7.)

initially and again upon reconsideration.  (Id. at 88-104.)
Plaintiff then requested a hearing before an Administrative Law
Judge ("ALJ").  (Id. at 113-14.)  Plaintiff, her attorney, and a
vocational expert attended the March 13, 2014 hearing. (Id.
at 28-65.)  On July 25, 2014, the ALJ determined that Plaintiff
was not disabled under the Act.  (Id. at 15-22.)

Specifically, the ALJ concluded that (1) Plaintiff had not
worked during the relevant period; (2) her severe impairments
were obesity and degenerative disc disease; (3) she did not meet
or equal a listed impairment; and (4) she could perform
sedentary work, so long as she could repeatedly stand at will
for two minutes throughout the day after sitting 45 minutes; she
was prohibited from overhead reaching; and she could use a cane
to ambulate to her job assignment, without needing it in
performance of her job duties.  (Tr. at 17-21.)

The ALJ then concluded that Plaintiff was unable to perform
any past relevant work.  (Id. at 21.)  Next, based on
Plaintiff's age as a "younger individual," her high school
education and ability to communicate in English, her work
experience, and her Residual Functional Capacity ("RFC"), the
ALJ found that there were jobs in the national economy that she
could perform.  (Id.)  Accordingly, the ALJ entered a Decision

-2-

that Plaintiff was not disabled and denied her benefits.  (Id. at 22-22.)

Plaintiff requested that the Appeals Council review the ALJ's Decision and on October 14, 2014 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review.  (Id. at 1-4.)

## II.  **LEGAL STANDARD**

Federal law authorizes judicial review of the Commissioner's denial of social security benefits.  42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.

-3-

1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)).

"It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation

marks omitted). "If there is evidence to justify a refusal to

direct a verdict were the case before a jury, then there is

substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal

quotation marks omitted).

"In reviewing for substantial evidence, the court should

not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the

[ALJ]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and

quotation marks omitted). "Where conflicting evidence allows

reasonable minds to differ as to whether a claimant is disabled,

the responsibility for that decision falls on the ALJ."

<u>Hancock</u>, 667 F.3d at 472.

In undertaking this limited review, this court notes that

"[a] claimant for disability benefits bears the burden of

proving a disability." <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th

Cir. 1981). In this context, "disability" means the "'inability

to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be

-4-

expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. § 404.1520(a)(4)). "Under this process, the Commissioner asks, . . . [if] the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three,

-5-

i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[2]

Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

-6-

F.2d at 264-65.  If, at this step, the Government cannot carry

its "evidentiary burden of proving that [the claimant] remains

able to work other jobs available in the community," the

claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[3]

## III. <u>ANALYSIS</u>

Plaintiff raises three issues.  First, Plaintiff contends

that the ALJ erred by according inadequate weight to her

treating physician. (Pl.'s Mem. of Law in Supp. of Mot. for J.

on the Admin. Record ("Pl.'s Br.') (Doc. 10) at 1.)  Second, she

contends that the ALJ's credibility determination was not

supported by substantial evidence.  (<u>Id.</u> at 2.)  Third, and

likewise, Plaintiff contends that the ALJ's step-five finding

was not supported by substantial evidence.  (<u>Id.</u>)  As explained

below, none of these arguments has merit.

### A.  <u>The ALJ's Analysis of Dr. Harrison's Medical Opinion is Supported by Substantial Evidence</u>

Plaintiff contends that the ALJ erred in weighing the

opinion of treating physician Dr. Matthew Harrison.  (Pl.'s Br.

(Doc. 10) at 5 citing Tr. at 331-32.)  The "treating physician

_____

[3] A claimant thus can qualify as disabled via two paths
through the five-step sequential evaluation process.  The first
path requires resolution of the questions at steps one, two, and
three in the claimant's favor, whereas, on the second path, the
claimant must prevail at steps one, two, four, and five.

rule," 20 C.F.R. § 404.1527(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. 20 C.F.R. § 404.1527(c)(2)-(6). These factors include: (i) the length of the treatment relationship and frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the evidence in support of the treating physician's opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. <u>Id.</u>

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not

-8-

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); accord Mastro, 270 F.3d at 178. Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Here, the ALJ's decision to afford Dr. Harrison's opinion less than controlling weight was well-supported.[4]  More specifically, in setting Plaintiff's RFC, the ALJ evaluated the record, including the medical reports on record as well as Plaintiff's daily activities. (Tr. at 19-21.) The ALJ also weighted the various opinions from the medical professionals of record.  (Id.)

---

[4] The court notes that in setting forth this argument, Plaintiff initially charges the ALJ with failing to accord the appropriate weight to both treating physician Harrison and consultative examiner Dr. Lori Schneider. (Pl.'s Br. (Doc. 10) at 1.)  However, when Plaintiff later restates this argument and sets forth its details, she merely contends that the ALJ erred as to Dr. Harrison by misapplying the treating physician rule. (Id. at 3-10.)  Plaintiff has therefore failed to make a compelling (or, for that matter, any) argument as to why the ALJ's handling of Dr. Schneider's opinion would warrant a remand or an outright award of benefits, and the court can see no reason why such a result is warranted.

In doing so, the ALJ also ultimately discussed Dr. Harrison's opinion specifically, noting:

> [T]he undersigned has given little weight to the opinion of the claimant's treating physician Dr. Matthew Harrison. Specifically, when the claimant followed up in January 2012, Dr. Harrison noted that the claimant could not perform a managerial job, as she was unable to stand at the cash register for four minutes. (Exhibit 8F) Dr. Harrison subsequently submitted a residual functional capacity questionnaire in June 2012 in support of the claimant's application for disability. However, the ultimate issue of disability is reserved for the commissioner. SSR 96-5p. In this case, Dr. Harrison's opinion has been considered and found to be less than fully supported by the objective medical evidence of record.

(Tr. at 20-21.)

These conclusions are legally sound and are supported by substantial record evidence for the following reasons. First, contrary to Plaintiff's suggestion, the objective test results are inconsistent with claims of debilitating symptoms related to her back ailment.

Specifically, an MRI of Plaintiff's lumbar spine conducted in January 2010, approximately two years before Plaintiff's alleged disability onset date, revealed mild disc bulging at T10-11 and a "stable" T11-T12; no abnormalities in L1-2 and L2-3; "minimal" disc bulging at L3-4 and L4-5; and "small" left paramedian herniation at L5-S1. (Tr. at 328.) The ALJ

-10-

specifically cited this exhibit in finding that Plaintiff's MRIs were "'stable' comparatively speaking." (Tr. at 19.)

During a visit on March 6, 2012, the January 2010 study was reviewed by Plaintiff's medical provider and corresponding treatment notes also documented "small" herniation at L5-S1 and "hypertrophic facet arthropathic and bilateral mild foraminal narrowing." (Tr. at 314, 316.) A physical examination conducted during the visit demonstrated "normal" results in all material categories, including normal gait and station, with the only exception being a positive left straight leg raise. (Tr. at 315-16.) Based on this, Plaintiff was diagnosed with "[m]ild" herniation at L5-S1. (Tr. at 316.) Again, the ALJ specifically cited this exhibit in finding that Plaintiff's MRIs were "'stable' comparatively speaking." (Tr. at 19.)

On March 13, 2012, another MRI of Plaintiff's lumbar spine revealed: "[s]table normal lumbar vertebral body height and alignment"; "moderate" loss of disc space height and "[m]ild" reactive discogenic marrow signals at L5-S1; and otherwise "unremarkable" marrow signal. (Tr. at 319.) The study additionally demonstrated no disc herniation or spinal stenosis at L1-2; no disc herniation or spinal stenosis at L2-3 (though there was "[m]ild facet arthropathy and mild left lateral disc bulge"); "[v]ery mild" narrowing at L3-4 along with a mild disc

-11-

bulge; "[s]table mild lateral recess stenosis" at L4-5, along with "mild to moderate facet arthropathy and ligamentum flavum thickening" and other mild findings; and stable mild right foraminal stenosis at L5-S1 along with moderate left foraminal stenosis and other mild findings. (Tr. at 319-20.) In comparing the March 2012 MRI to the study conducted in January 2010, the medical professionals concluded that "[o]verall, the scan looks stable from the prior study acquired approximately two years ago." (Tr. at 312.)

Similarly, a physical examination conducted in March of 2012 is consistent with the previous, as Plaintiff was oriented, demonstrated a "normal" gait/station, exhibited "normal" range of motion in her cervical, thoracic, and lumbar spine, and revealed "normal" range of motion in both legs. (Tr. at 311.) Plaintiff was described as "overall stable over the past 2 years despite worsening of her symptoms." (Tr. 310-12.) Again, the ALJ specifically cited this exhibit in finding that Plaintiff's MRIs were "'stable' comparatively speaking." (Tr. at 19.)

Second, while Dr. Harrison's opinion is inconsistent with the above, it took the form of a checkbox questionnaire without explanation or supporting evidence. (Tr. at 331-32.) Dr. Harrison's two-page form noted a diagnosis of "back pain" and concluded Plaintiff could only walk for five continuous

-12-

minutes and one total hour during an eight-hour workday; sit for five continuous minutes and one total hour during an eight-hour workday; and occasionally lift less than ten pounds. (Tr. at 331-32.) Dr. Harrison further concluded that Plaintiff could not reach with her arms, would need unscheduled breaks every ten to fifteen minutes, and that she was physically incapable of working on a sustained basis. (Id.)

Dr. Harrison provided no support for his conclusions and no explanation for the conflict between objective exams in the record, which as explained above, demonstrated "mild" disc herniation, "normal" physical capabilities, and largely "stable" findings, and the limitations set forth in his opinion.[5]

Third, Dr. Harrison's June 2012 opinion also conflicts with additional substantial evidence contained in the record. (Tr. at 244-52, 335-50, 424-30, 451-52, 455.) Evidence demonstrates that Plaintiff performed a wide-range of daily living activities, conflicting with the findings in Dr. Harrison's

---

[5] See 20 C.F.R. § 404.1527(c)(3) (providing "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"); Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . , which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993))).

questionnaire. (Tr. at 19-20, 244-52.) For example, in a third-party report completed by Plaintiff's daughter, she reported that Plaintiff prepared meals for herself and her children (three times a day); performed household chores, including, vacuuming, laundry, and dishwashing (totaling two to three hours a day); took care of her children; tended to her personal care needs; took her "little" dog on walks (three times a day); spent her free time watching television and on Facebook; shopped for groceries independently (three times a week); and attended her son's sporting events. (Tr. at 244-52.)

The ALJ also relied upon medical records demonstrating that Plaintiff's alleged symptoms were largely controlled and/or alleviated through conservative treatment measures. (Tr. at 19-20.)[6] Although Plaintiff was "adamantly against any type of interventional therapy or injections for her back," (Tr. at 19, 455), medical evidence reveals that her symptoms were generally "under control" and "better" and that she generally had no issue performing her various activities of daily living. (Tr. at 20, 335-46, 424-30, 451-52.)

---

[6] 20 C.F.R. § 404.1530; see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Fourth, the ALJ also relied upon the state agency consultant opinion indicating that Plaintiff was capable of performing medium work, rather than the more restrictive RFC ultimately formulated by the ALJ. Compare (Tr. at 80) with (Tr. at 18, 20). Non-examining state agency consultant Dr. Jack Drummond determined that Plaintiff could only lift fifty pounds occasionally and twenty-five pounds frequently, could stand/walk for six hours during an eight-hour workday, and sit for six hours during the same. (Tr. at 80.) Dr. Drummond also determined that Plaintiff had no postural limitations. (Id.) However, in light of the totality of evidence, the ALJ determined that Dr. Drummond's RFC assessment was not restrictive enough. (Tr. at 18-20.) Consequently, the ALJ set a more restrictive RFC to sedentary work with additional limitations. (Tr. at 18.)

Fifth, to the extent that Dr. Harrison opined as to Plaintiff's ability to maintain employment, (Tr. at 331-32), the ALJ correctly noted that the "ultimate issue of disability is reserved for the commissioner." (Tr. at 20.) 20 C.F.R. § 404.1527(d); Coleman v. Astrue, No. 3:10-CV-1254, 2011 WL 3924187, at *16-17 (S.D. W.Va. Sept. 7, 2011).

Plaintiff's arguments to the contrary are not persuasive. She contends that the ALJ failed to point to persuasive contrary

-15-

evidence that would warrant a rejection of Dr. Harrison's opinion.  (Pl.'s Br. (Doc. 10) at 5-6.)  However, as explained in detail above, the ALJ pointed to a great deal of evidence that warranted affording Dr. Harrison's opinion less than controlling weight.

Plaintiff contends further that the ALJ failed to properly discuss the regulatory factors.  (Id. at 6-7.)  An adjudicator need not "apply the factors in a mechanical fashion" nor engage in "rigid analysis." Carter v. Astrue, Civil Action No. CBD–10–1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011). The adjudicator's analysis is sufficient if it includes "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Social Security Ruling ("SSR") 96–2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5 (July 2, 1996).

And, in any event, it is clear the ALJ sufficiently considered the factors here.  Plaintiff faults the ALJ for failing to take into consideration the length of the treatment relationship with Dr. Harrison and the frequency of his

-16-

examinations.  (Pl.'s Br. (Doc. 10) at 7 referencing Tr. at 301,

303, 305, 326, 328, 363.)  However, in his decision, the ALJ

points to the exhibits containing the reports of these

examinations, so the ALJ clearly took both factors into

consideration.  (Tr. at 17 citing Exs. 1F & 8F (Tr. at 300-06;

360-66); Tr. at 19 citing Ex. 4F (Tr. at 325-28).)[7]  The ALJ's

analysis of Dr. Harrison's opinion was legally sound and

supported by substantial evidence. This argument has no merit.

**B.**   **The ALJ's Credibility Analysis is Supported by Substantial Evidence**

Plaintiff next contests the credibility analysis. (Pl.'s

Br. (Doc. 10) at 2.)  Regarding credibility, Craig v. Chater,

76 F.3d 585 (4th Cir. 1996) provides a two-part test for

---

[7] Plaintiff also asserts that a physician's assistant, Sara Frye, P.A., observed disabling impairments and implies that the ALJ ignored her findings. ((Pl.'s Br. (Doc. 10) at 8-9 citing Tr. at 311-12, 316.)  However, Frye's findings were largely normal, though they included findings of a mild disc herniation and mild decrease in strength of flexion of the left leg.  (Id.) And, as discussed previously, the ALJ cited to and discussed the findings in this exhibit, accurately noting that they indicated that Plaintiff's diagnostic MRI were comparatively stable. (Tr. at 19.) Plaintiff also contends that consulting examiner, Dr. Lori Schneider, identified limitations consistent with Dr. Harrison's.  (Pl.'s Br. (Doc. 10) at 7-8 citing Tr. at 462-67.) However, the ALJ partially discounted Dr. Schneider's opinion to the extent it was inconsistent with the RFC in light of the other evidence described above and for lack of a longitudinal treatment relationship.  (Tr. at 21.)  As noted at the outset of this Memorandum Opinion and Order, it is the job of the ALJ to evaluate conflicting evidence and determine whether Plaintiff is disabled, which is what the ALJ did here.

-17-

evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)) (emphasis omitted). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider the evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. Id. at 595-96.

While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. Id.

Where the ALJ has considered the relevant factors[8] and heard the claimant's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference.  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step <u>Craig</u> analysis. First, the ALJ stated that he had "careful[ly] consider[ed]" the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. at 19.)  The ALJ therefore discharged his duty under the first step of the <u>Craig</u> analysis.

The ALJ went on to perform the second step of the <u>Craig</u> analysis, concluding further that "the claimant's statements concerning the intensity, persistence and limiting effects of

---

[8] The relevant regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (vi) any measures the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3). The regulations do not mandate that the ALJ discuss all these factors in a decision. <u>See, e.g.</u>, <u>Baggett v. Astrue</u>, No. 5:08-CV-165-D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished) (noting that the law requires "that the ALJ consider these factors, not that [s]he discuss each of them").

these symptoms are not entirely credible for the reasons explained in this decision."[9] (Id.)

Contrary to Plaintiff's assertion, therefore, the ALJ appropriately determined that although her impairments could reasonably cause some limitation, Plaintiff's claims of debilitating symptoms were not fully credible. (Tr. at 19-21.) As discussed above, Plaintiff's test results of generally normal and mild findings are inconsistent with disabling back pain. (Tr. at 19, 311-12, 315-20, 328.) Likewise, Plaintiff's allegations of disabling back pain were also at odds with the treatment notes demonstrating that Plaintiff's alleged back pain was "under control" and that she maintained the ability to "function well." (Tr. at 20, 335-46, 424-30, 451-52.)

Similarly, Dr. Drummond concluded that Plaintiff had no postural limitations and that she could perform medium work, stand/walk for six hours, and sit for six hours in the course of an eight-hour workday. (Tr. at 20, 80.) Although the ALJ gave Plaintiff the "benefit of the doubt regarding her limitations," and set a more restrictive RFC (i.e., sedentary work with additional limitations), the ALJ correctly observed that

---

[9] The ALJ did not use the inappropriate boilerplate mentioned in Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015).

Plaintiff's allegations were also inconsistent with the opinion of the non-examining state agency. (Tr. at 20.)

Likewise, the fact that Plaintiff continued to perform a wide-range of daily living activities during her alleged period of disability, was inconsistent with her allegations of disability. As noted, Plaintiff tended to her personal care needs without issue or assistance; performed various household chores (i.e., vacuuming, laundry, and dishwashing); took care of her children; took her dog on walks; shopped for groceries independently; and attended her son's sporting events. (Tr. at 19-20, 244-52.)

Plaintiff's arguments to the contrary are not persuasive. She faults the ALJ for failing to discuss each of the above-mentioned regulatory factors. (Pl.'s Br. (Doc. 10) at 11.) However, "an ALJ is not required to specifically discuss each bit of evidence on the record or each regulatory factor. What the ALJ must do — and what the ALJ did do here — is take into consideration all the evidence and all the relevant factors and articulate an RFC and credibility determination supported by substantial evidence." Edwards v. Colvin, No. 1:12-CV-1249,

2014 WL 4442061, at *5 (M.D.N.C. Sept. 9, 2014).[10]  The ALJ's
findings here (described above) make it clear he took into
consideration the relevant regulatory factors.[11]

Plaintiff also faults the ALJ for noting that (1) she
"continued to work through December 2011" despite her "extensive
history of low back pain of at least 10 years" (Pl.'s Br. (Doc.
10) at 10 citing Tr. at 19), (2) she declined surgical
intervention, and (3) she declined epidural steroid injections
because she was afraid of needles.  (Id. citing Tr. at 455.)
Plaintiff has not made a compelling argument as to why her

---

[10] See, e.g., Lekousis v. Colvin, No. 13 C 3773, 2015 WL
3856543, at *4 (N.D. Ill. June 19, 2015); Williams v. Astrue,
No. 10-CV-499S, 2012 WL 1114052, at *7 (W.D.N.Y. Mar. 30, 2012).

[11] Plaintiff particularly faults the ALJ for failing to
mention the fact that she tried narcotic pain medication (and
other non-narcotic pain medication) to alleviate pain, but that
she quit taking narcotic pain medication because of a fear of
dependency. (Pl.'s Br. (Doc. 10) at 11 citing Tr. at 335-51,
424-52, 455.) An ALJ need not reference and explain every
exhibit in the record and in any event, the ALJ here
specifically noted that Plaintiff visited a pain clinic. (Tr. at
20 citing 335-46, 424-30, 450-52.)  See Brittain v. Sullivan,
No. 91-1132, 1992 WL 44817, at *6 (4th Cir. Mar. 11, 1992)
(unpublished) ("An ALJ need not comment on all evidence
submitted."). Plaintiff also faults the ALJ for failing to take
into account her reports of pain while standing, sitting,
bending, and lifting.  (Pl.'s Br. (Doc. 10) at 11.)  However, as
evinced in the ALJ's decision, and the remainder of this
Memorandum Opinion and Order, the ALJ did take this testimony
into account, but ultimately did not find it entirely
persuasive.  Plaintiff has failed to demonstrate any error here,
much less a material error.

relatively conservative treatment or why Plaintiff's ability to
work through December of 2011 is irrelevant to her allegations
of disabling pain.  And, in any event, even without these
observations the ALJ's credibility analysis remains legally
sound and supported by substantial evidence for the other
reasons describe above.[12]

### C. __The ALJ's Step Five Analysis is Supported by Substantial Evidence__

Plaintiff's last argument is that, as a result of the other
purported errors described above in both assessing Plaintiff's
RFC and evaluating her credibility, the hypotheticals presented
to the vocational expert ("VE") by the ALJ failed to capture all
of her limitations. (Pl.'s Br. (Doc. 10) at 11-12.)
Consequently, Plaintiff concludes, the step-five finding that
there are other jobs that she can perform is not supported by
substantial evidence.  (Id.)

It is true that in questioning a VE in a Social Security
disability hearing, an ALJ must propound hypothetical questions

---

[12] See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994);
Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012);
Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 714 (6th Cir. 2012);
Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-61
(9th Cir. 2008); Tomassetti v. Astrue, No. 7:11-CV-88-D, 2012 WL
4321646, at *11 (E.D.N.C. Aug. 22, 2012) adopted by 2012 WL
4321632 (E.D.N.C. Sept. 20, 2012); Hosey v. Astrue, Civil Action
No. 2:11-cv-42, 2012 WL 667813, at *7 (N.D. W.Va. Feb. 6, 2012)
adopted by 2012 WL 665098 (N.D. W.Va. Feb 28, 2012).

-23-

that account for all of the claimant's limitations.  Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).  The problem with Plaintiff's argument here, however, is that as discussed in detail above there were no material errors in the ALJ's RFC or credibility findings. The ALJ presented to the VE a hypothetical that accounted for all Plaintiff's limitations.  (Tr. at 283-84.)  Given that Plaintiff's step-five argument is based upon an erroneous premise, it has no merit.[13]

IV.  **CONCLUSION**

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's motion for

---

[13] Plaintiff claims that "the VE testified that a person without the ability to reach forward or overhead would be unable to perform any jobs in the national economy." (Pl.'s Br. (Doc. 10) at 11-12 referencing Tr. at 55.)  This is not so.  The VE testified that there were jobs Plaintiff could perform even if she could not reach overhead (Tr. at 55); however, the VE also testified further that if Plaintiff were precluded from "leaning forward and reaching with no weight in her hands," that would eliminate jobs. (Tr. at 56.) As noted, Plaintiff's RFC prohibited overhead reaching but not from leaning forward.  It is not clear whether Plaintiff is contending that she was unable to lean forward with no weight in her hands.  To the extent she is, that issue fails for want of (1) meaningful argument in support, (2) non-conclusory evidence in support, and (3) any discernable error in the ALJ's RFC finding and credibility findings described above.

summary judgment (Doc. 9) is **DENIED**, that the Commissioner's motion for judgment on the pleadings (Doc. 13) is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 28th day of March, 2016.

_____
United States District Judge